IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

C.W.P., a minor child, and                                                      PLAINTIFFS
MICHAEL PHILLIPS, individually
and as parent and next friend to C.W.P

V.                                                                No. 4:12-cv-00094-DMB-JMV

MALCOLM BROWN, individually and
in his official capacity as
Principal of Simmons High School;
THE HOLLANDALE SCHOOL DISTRICT;
JAMES JOHNSON-WALDINGTON,
individually and as Superintendent
of the Hollandale School District; and
JOBANNA FRYE, individually and as
Assistant Superintendent of the
Hollandale School District                                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This race discrimination action is brought by Michael Phillips, and his son C.W.P., a minor child formerly enrolled at Simmons High School in the Hollandale School District of Mississippi. The amended complaint asserts claims against: (1) the Hollandale School District; (2) Malcom Brown, individually and in his official capacity as the principal of Simmons High School; (3) James Johnson-Waldington, individually and in his official capacity as Superintendent of the Hollandale School District; and (4) Jobanna Frye,[1] individually and in her official capacity as Assistant Superintendent of the Hollandale School District. Two 12(b)(6) motions are before the Court: (1) a motion to dismiss filed by Brown, Johnson-Waldington, and Frye ("Individual Defendants") in their individual capacities, Doc. #37; and (2) a motion to

---

[1] Although Plaintiffs identify this defendant as "Jobanna Frye," Defendants refer to the same defendant as "Jobana Frey" in their amended answer and motions to dismiss. *See, e.g.* Doc. #36 at 1.

dismiss filed by the Hollandale School District and the Individual Defendants in their official capacities, Doc. #38.

# I
# 12(b)(6) Standard

As a general matter, "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a complaint falls short of this directive, a defendant may move to dismiss the claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering the interplay between Rule 8 and Rule 12, the United States Supreme Court has explained that:

> To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and punctuation omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–58 (2007)). Under this standard, a "court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011) (internal quotation marks and punctuation omitted).

# II
# Factual Allegations

A. Relevant Persons

In the fall of 2011, Plaintiff C.W.P. entered his senior year at Simmons High School

("SHS"), which is located in Hollandale, Mississippi, in the Hollandale School District. Doc. #26 at ¶¶ 5–6. C.W.P. was the only white student in his senior class. *Id*. At the time period relevant to this suit, Defendant Malcolm Brown served as Principal of SHS, *id*. at ¶ 33; Defendant Jobanna Frye served as Assistant Superintendent of the Hollandale School District, *id*. at ¶ 59; and Defendant James Johnson-Waldington served as Superintendent of the Hollandale School District, *id*. at ¶ 63.

### B. Selective Enforcement of School Policies

During C.W.P.'s senior year, SHS maintained a written policy under which students who drove to campus were required to turn in their car keys at the beginning of each school day. Doc. #26 at ¶ 8. The school also required that students driving to campus provide proof of car insurance and registration. *Id.* at ¶ 16. Although "a number of black students" and Plaintiff drove to school regularly, the car policies went largely un-enforced. *Id*. at ¶¶ 9–10 & 16.

Sometime during C.W.P.'s senior year, Brown and other school officials, including Vice Principal Carlos Thompson, "began demanding that C.W.P. turn his keys in." *Id*. at ¶ 10. On one occasion, Thompson "yelled" at C.W.P. regarding the key policy. *Id*. at ¶ 11. Thompson subsequently apologized for this action. *Id*.

School officials did not enforce the key policy against African American students who drove to school. Doc. #26 at ¶ 12. When C.W.P. complained about the unequal enforcement, "school administrators … claimed to not be aware of the number of black students who were driving to school every day." *Id*. at ¶ 14.

Also during his senior year, school officials requested that C.W.P. provide insurance and registration documents for his car. Doc. #26 at ¶ 16. Despite the fact that school administrators

were aware of African American students driving to school, C.W.P. was the only student forced to comply with the insurance/registration policy. *Id*.

After receiving complaints from C.W.P. and his father Michael Phillips, school officials ceased efforts to enforce the automobile policies against C.W.P. *Id*. at ¶ 17.

In addition to disparate treatment under the automobile policies, the plaintiffs allege that school officials required Michael Phillips to sign C.W.P. out of school on days C.W.P. needed to leave early to go to a job. Doc. #26 at ¶ 18. According to the plaintiffs, this practice "was highly inconvenient." *Id*. African American students, in contrast, could leave early without a parent/guardian signature. *Id*.

### C. Graduation Event Payments

Commensurate with school policy, parents were required to pay to SHS: (1) $85 as "senior dues" for a senior picnic and rental of caps and gowns for graduation ceremonies; and (2) $110 for a "required outfit" for a "senior class night." Doc. #26 at ¶¶ 23, 25. Michael Phillips made both of these payments on behalf of C.W.P. *Id*. at ¶¶ 24–25.

### D. "Senior Skip Day"

Approximately two weeks before the end of classes in 2012, the senior class held a "senior skip day." Doc. #26 at ¶ 19. Senior skip day was a "tradition" SHS "never [had] any problems with … in the past." *Id*. at 20.

On the day of the senior picnic, students in the senior class were told to report to the school gymnasium. Doc. #26 at ¶¶ 26–28. Inside the gym, Brown informed the class that the senior picnic had been canceled due to "participation in the … 'senior skip day.'" *Id*. at ¶ 29.

Following Brown's announcement, the senior class became "angry and rambunctious." Doc. #26 at ¶ 30. Some students threatened to "start a disturbance" if the money paid for the

picnic was not returned. *Id*. When the students began expressing their anger, C.W.P. stood by "Officer Delaney" "to stay out of it." *Id*. at ¶ 31. Officer Delaney then attempted to calm the students down. *Id*. at ¶¶ 32–33.

After Officer Delaney calmed the students down, Brown turned away from the students to speak to another person. *Id*. While Brown's back was turned, an African American student began texting on her cell phone. *Id*. at ¶ 33. At the same time, C.W.P. received a telephone call from his father. *Id*. at ¶ 34. C.W.P. answered the phone, which was on "vibrate" mode, and turned away from the group so as to "not create a distraction." *Id*. at ¶¶ 34–36.

Sometime during C.W.P.'s conversation with his father, Brown turned back to face the senior class. Doc. # 26 at ¶ 37. Brown observed the African American student with her phone out and asked if she was texting. *Id*. The student denied texting and placed her phone down. *Id*. Brown then "accused" C.W.P. of texting and demanded that C.W.P. turn the phone over to Vice Principal Thompson. *Id*. at ¶ 38. C.W.P. turned the phone off and gave it to Thompson. *Id*. at ¶ 39. Thompson received the phone and unsuccessfully attempted to turn the device on. *Id*.

When C.W.P. turned over his phone to Thompson, Brown "launched into an angry and openly racist tirade." Doc. #26 at ¶ 41. During this speech, Brown stated that "white people had been the dominant race, but that black people were tired of being held back by the white people and being controlled by them." *Id*. Brown also stated that it was "time for a change," and that "it was time for [African Americans] to step up and take over and to be the dominant race now." *Id*. at ¶ 42.

During this speech, "several" of C.W.P's classmates pointed out to Brown that C.W.P. was in the room. Doc. #26 at ¶ 43. Brown responded that "no one white person is going to hold

me back from giving my speech to the rest of you." *Id*. at ¶ 44. Brown's remarks lasted approximately five minutes. *Id*. at ¶ 45.

After Brown finished speaking, C.W.P. asked Brown if he could remove the memory card from his phone.[2] Doc. #26 at ¶ 48. Brown responded, "no." *Id*. When C.W.P. "calm[ly] and respectful[ly]" questioned this response, Brown "exploded" and began yelling "get out of my school. I run things." *Id*. at ¶¶ 50–51. Brown then told C.W.P. that he would not be allowed to graduate or ever return to SHS. *Id*. Following this pronouncement, Brown escorted C.W.P. out of the school. *Id*. at ¶¶ 52–53.

On the way out of the school, C.W.P. asked a friend if he could borrow a phone to call his father. Doc. #26 at ¶ 53. Brown told C.W.P.'s friend that if the friend gave C.W.P. the phone, Brown would take the phone and kick the friend out of school. *Id*. Brown also prohibited the friend, who had often received rides home from C.W.P., from driving with C.W.P. *Id*. at 54. When a janitor attempted to counsel a crying C.W.P., Brown told the janitor, "get away from [him]. He is banned." *Id*. at ¶ 56. Following this exchange, C.W.P. drove slowly away. *Id*. at ¶ 57.

### E. Meetings with District Officials

When he left the school grounds, C.W.P. called his father, who met him at a convenience store. Doc. #26 at ¶ 59. C.W.P. and Phillips then traveled to the District Superintendent's office and met with Frye, the Assistant Superintendent. *Id*. at ¶ 60.

Frye told the plaintiffs that she was "personally offended by Brown's remarks." Doc. #26 at ¶ 60. She also stated that this was not the first time Brown "had made similar racist remarks." *Id*. Specifically, she recounted that Brown made a "similar speech" at the high school

---

[2] C.W.P. asked for the memory card because he "was concerned that they would go through all of the data on his telephone, as Thompson had already tried to do, or would leave it laying out in the office where any one could steal it, as they had previously done with his car keys." Doc. #26 at ¶ 47.

6

during Black History Month. *Id*. Frye then walked into Superintendent Johnson-Waldington's office to call Brown. *Id*. at ¶ 62.

When Frye re-entered the room with Johnson-Waldington, she accused C.W.P. of "spinning out" his tires on his way out of the parking lot. Doc. #26 at ¶ 62. Johnson-Waldington told the plaintiffs that he supported Brown, that it was "Brown's school," and that Brown "could run it as he saw fit." *Id*. at ¶¶ 65–66. Thus, Johnson-Waldington refused to override Brown's decision and informed the plaintiffs that C.W.P. would not be allowed to attend any graduation events. *Id*. at ¶ 67. Nevertheless, Johnson-Waldington explained that Brown would "think about" modifying his decision and would call the plaintiffs later. *Id*. at ¶ 69. In the interim, C.W.P. was suspended for five days. *Id*.

Brown never called the plaintiffs. Doc. #26 at ¶ 70. When Brown failed to call the plaintiffs back, Phillips attempted to reach Brown. *Id*. Sometime later, Thompson called Phillips back. *Id*. at ¶ 71. During their conversation, Thompson informed Phillips that: (1) "Brown must have felt disrespected," but that Thompson did not know why; (2) Brown should not have acted the way he did; and that (3) C.W.P. had never caused trouble at the school. *Id*.

**F. The Complaint**

On October 5, 2012, Plaintiffs filed this action. Doc. #1. On June 20, 2013, Plaintiffs filed an amended complaint. Doc. #26. In the amended complaint, C.W.P. asserts: (1) constitutional claims against the Individual Defendants in their official and individual capacities for violations of C.W.P.'s rights to equal protection and substantive due process; (2) state law claims for intentional infliction of emotional distress against the Individual Defendants in their individual capacities; (3) a state law claim for intentional infliction of emotional distress against the Hollandale School District; and (4) an ambiguous claim for "retaliation" against the School

7

District and Brown. Additionally, Phillips asserts: (1) a claim for violation of his procedural due process rights against the School District; (2) a claim for conversion against the School District; (3) claims for violation of his procedural due process rights against the Individual Defendants in their individual and official capacities; and (4) claims for conversion against the Individual Defendants in their individual and official capacities.

### III
### Motion to Dismiss Individual Capacity Claims

The Individual Defendants filed a motion to dismiss the claims brought against them in their individual capacities. Doc. #37. In their motion, the Individual Defendants argue that the claims against them in their individual capacities must fail because they are entitled to qualified immunity and because the plaintiffs failed to provide notice under the Mississippi Tort Claims Act. The Individual Defendants do not cite any authority for the relief they seek. Furthermore, they argue that "[b]ecause this Motion is self-explanatory, Defendants request they be relieved of the necessity of filing a separate Brief and Memorandum of Authorities." Doc. #37 at ¶ 14.

The Local Rules of this Court require that "[a]the time [a] motion is served, other than motions or applications that may be heard ex parte or those involving necessitous or urgent matters, counsel for movant must file a memorandum brief in support of the motion." L.U. Civ. R. 7(b)(4). The rule cautions that "[f]ailure to timely submit the required motion documents may result in the denial of the motion." *Id*. This rule reflects the policy that "[c]omplete briefing is especially important when the party asserting the 'law' has the burden of proof." *Verso Paper, LLC v. HireRight, Inc.*, No. 3:11-mc-628, 2012 WL 2376046, at *5 (S.D. Miss. June 22, 2012).

Generally, where a defendant does "not provide a memorandum of authorities in support of its Motion [and] not cite any cases supporting its claim that it is entitled to dismissal," the proper course is to deny the motion. *See Bruner v. Cemex, Inc.*, No. 1:08-cv-1386, 2010 WL

8

3455244, at *1 (S.D. Miss. Aug. 27, 2010); *see also McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones."); *Younger v. Ohio Dep't of Rehab. & Corr.*, No. 2:13-cv-746, 2014 WL 559250, at *2 (S.D. Ohio Feb. 11, 2014) (denying motion to dismiss where briefing left "the Court to its own devices to guess at the parties' relevant arguments in order to engage in any sort of analysis that is not bereft of nuance"). The Court will follow this sensible rule and will deny the Individual Defendants' motion to dismiss the claims brought against them in their individual capacities.

## IV
## Motion to Dismiss Official Capacity State Law Claims

Next, the Individual Defendants, in their official[3] capacities, and the Hollandale School District move to dismiss the state law claims for conversion and intentional infliction of emotional distress. Doc. #38. Specifically, the Individual Defendants argue that the claims fail because Plaintiffs did not provide notice of their claims within ninety (90) days of filing the present lawsuit, as required by the Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. § 11-46-1, et seq.

The MTCA "provides for a limited waiver of sovereign immunity and permits the maintenance of only certain types of claims against … a governmental agency." *Liggans v. Coahoma Cnty. Sheriff's Dep't*, 823 So.2d 1152, 1154 (Miss. 2002). The law "is the exclusive remedy for filing a lawsuit against [Mississippi] governmental entities and [their] employees."

---

[3] In their motion to dismiss the individual capacity claims, the Individual Defendants stated, "If this Motion is not well taken and is denied, Defendants hereby request to join in the separately filed Answer and Defenses of the Hollandale School District and the Defendants in their official capacities." Doc. #37 at ¶ 15. Such is not a request to join the motion to dismiss the official capacity claims. To the extent the Individual Defendants seek leave to join the School District's answer, they will have fourteen days from the filing of this order to serve a responsive pleading. *See* Fed R. Civ. P. 12(a)(4)(A).

*City of Jackson v. Brister*, 838 So.2d 274, 278 (Miss. 2003). Claims brought under the MTCA are subject to a one-year statute of limitations and to notice requirements enumerated in the statute. *See* Miss. Code Ann. § 11-46-11(3).

The MTCA requires that "any person having a claim under this chapter shall proceed as he might in any action at law or in equity, except that at least ninety (90) days before instituting suit, the person must file a notice of claim with the chief executive officer of the governmental entity." Miss. Code Ann. § 11-46-11(1). "The notice of claim requirement imposes a condition precedent to the right to maintain an action." *Gale v. Thomas*, 759 So.2d 1150, 1158 (Miss. 1999) (internal quotation marks omitted).

Here, Plaintiffs concede that the state law claims for intentional infliction of emotional distress and conversion brought against the Individual Defendants in their official capacities and against the Hollandale School District should be dismissed. Doc. #42. Accordingly, the motion to dismiss will be granted.

### IV
### Conclusion

For the reasons set forth above, the motion to dismiss the individual capacity claims [37] is **DENIED**. The motion to dismiss the conversion and intentional infliction of emotional distress claims [38] brought against Brown, Frye, and Johnson-Waldington in their official capacities, and against the Hollandale School District, is **GRANTED**.

SO ORDERED, this the 26th day of September, 2014.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**